McNEILL, Associate Justice.
' This cause is before this Court on appeal by appellant, Florida Coca-Cola Bottling Company, a corporation, the defendant below, from that certain Final Judgment in Ejectment rendered and entered in the Circuit Court of Volusia County, Florida, January 6, 1954, in favor of appellees herein, as plaintiffs below.
On April 17, 1953, appellees, as plaintiffs below, filed in the Circuit Court of Volusia County against appellant, Florida Coca-Cola Bottling Company, as defendant below, their complaint in the usual form in ejectment, alleging that appellant, as defendant below, was in possession of a certain tract or parcel of land situate, lying and being in said County described as follows, to-wit:
“The Southerly five (5) feet, more or less, of Lots Two (2) and Three (3), R. L. Smith and Company’s Subdivision, entitled 'Bungalow Court', as per map of record in the office of the Clerk of the 'Circuit Court in Map Book Six (6), page One Hundred Fifty-nine’ (159), Volusia County, Floridá, containing about l/10th acres;” '
to, which plaintiffs claimed title and defendant had received the profits of said land since prior to June 25, 1949, of the yearly value of $1,200 and refused to. deliver possession of said-land-to plaintiffs or to pay the profits thereof.
In due course the defendant filed three defenses as follows:
“1. That the defendant is not guilty.
“2. That the defendant denies that it is now. or was at the institution of this suit in possession of the lands sued for.
“3. That the plaintiffs and their predecessors in title have acquiesced in the boundary line as established between their property and the property of the defendant and the plaintiffs were fully aware of the construction by the defendant of valuable and extensive improvements on, a portion of the property described by the plaintiffs as the Southerly five (5) feet, more or less, of Lots two (2) and three (3), R. L. Smith & Company’s Subdivision entitled ‘Bungalow Court’, as per map of record in Map Book 6, page 159, public records of Volusia County, Florida, and yet made no objection to such construction of improvements; all of said improvements having been made by defendant on the assumption that it was the undisputed owner of the property on which they were made; *195 and by reason ■ thereof the plaintiffs are now estopped to claim title to said lands or assert a claim therein.”
As shown by the record, evidence and exhibits, plaintiffs owned Lots 2 and 3 in Bungalow Court Subdivision, as shown on map recorded in Map 'Book 6, page 159,-of the public records of Volusia County, Florida, said lots facing northerly on Taylor Avenue and extending southerly to the southerly line of said Bungalow Court. Near the south line of said lot 2 .is located plaintiffs’ Radiator and Body Works building, the second story of which was occupied by plaintiffs as their residence,' and. on the south end thereof is-a second story porch extending across the south side of said building; and- defendant .owned lot 1 of said Bungalow Court which' lies between -the east line of plaintiffs’ aforesaid lot 2 and the west line of North Beach Street and from the south line on Taylor Avenue to the south line of Bungalow Court Subdivision; and defendant also owned lots 1 and 2 in Stewart’s Subdivision, according to plat in Map Book 4, page 149, .public records of Volusia County, Florida, which map was recorded several years before the map 'of Bungalow Court was recorded, fronting on the westerly line of North Beach Street, the northerly line of said lot 2 of Stewart’s Subdivision extending westerly from the west line of North Beach Street along or near to and parallel with the south iine of plaintiffs’ aforesaid lots 2 and 3 in Bungalow Court', and defendant has erected on its said lot .2 a -building wall extending from near the southeast corner of plaintiffs’ aforesaid lot 2 westerly along or near to and parallel with the south line of plaintiffs’ said lots 2 and 3, and the primary issue in this case was whether defendant’s aforesaid wall at the rear of plaintiffs’ aforesaid lots 2 and 3 was on any part of plaintiffs’ said lots 2 and 3, Bungalow Court, and if so, to what extent.
On the trial of this case before a jury one H. F. Duval, a witness for plaintiff, testified that he had been a surveyor for many years; whereupon, counsel for plaintiffs propounded to him the following questions :
“Mr. Duval, this action is to establish the boundary lines between the Robbins’ property known as lots 2 and 3 of the R. L. Smith and Company’s Subdivision of Bungalow Court, and the Florida Coca-Cola Bottling Company’s boundary line in the Stewart Subdivision. . Have you had occasion to make a survey of either of these properties?” ■ .
To which the witness answered, “I surveyed all of it.”
The witness was then asked, “Did you make a plat of .that survey ?” The witness answered, “I did.”
“Q. I hand you this paper and ask you to state what it is. A. This is a plat showing the building of Robbins, as well as encroachment of the building of the Coca-Cola building.
“Q. When did you make that survey? A. This survey was made in 1950, November 29, 1950, and previous to that time.
“Q. You had worked on it previous ? A. Oh yes.
“Q. And this survey covers the lots-1, 2, 3 and 4 of Bungalow Court? A. Yes. ■
“Q. Two and three of which are in litigation at the moment? ' A. Yes.”
The witness then testified that there was a hiatus between- Bungalow Court Subdivision, in which plaintiffs’ lots' 2 and 3- were located, and Stewart's Subdivision, in which defendant’s lots 1 and 2 were located, of 1% feet; and he further testified, “I found that the Coca-Cola Company’s building encroached three inches over on the Robbins’ land. In addition to that there is about two inches I would judge of footing foundation. The Coca-Cola people were lYs foot, they jumped a 1% hiatus between Bungalow Court and the Stewart Subdivision. They come across that lYi foot *196 and over three inches at that point on the Robbins’ land. Fifty feet north of that I found that they had encroached six inches of that an inch or two for footing-. At the further corner of the Coca-Cola property I found them, I am testifying from memory, about eight-tenths over.”
Plaintiffs witness, Hugh F. Duval, Jr., testified that he had been a registered surveyor in Florida since 1941; that he surveyed lots 2 and 3, Bungalow Court, in 1949 with his father, H. F. Duval, and after describing the manner in which this survey was made, he stated, “So, I assumed at that time from my location of Bungalow Court and the location of Stewart Subdivision shown by the record plat at Beach Street there is a hiatus or space between the two subdivisions of approximately a foot and a half (1%')* Then in surveying out, as I said, the lines of the lots in Bungalow Court, that we are interested in, I noted the encroachment of the Coca-Cola plant walls. The north line, the west line of the lots of the Coca-Cola building encroached approximately eight-tenths (8/10) on to the lines of Bungalow Court property, as I determined them, and the east line at lot 2, at the corner of lot 2, encroached approximately three inches (3"). Those encroachments of the walls and footings extend probably a tenth of a foot (1/10') or two inches (2") further on to the property of Bungalow Court.” The witness further stated that he made his survey for Mr. Robbins.
Witness, J. IT. Robbins, then testified he was one of the plaintiffs in the case, lived at 113 Taylor Avenue on lot 2 of R. L. Smith and Company’s Subdivision; that there was a building on lot 2 when he purchased it; that he had resided thereon since 1939; that at the time he bought his property he had it surveyed by Mr. Money-penny; that after he bought the property he put an apartment upstairs, extended it all the way across the rear end; that he had a porch upstairs at the back of the building, extending from one side of the building to the other; that the eaves extended over the south edge of this building “I think eighteen inches. Then I had an awning put up there, made out of Masonite and wood and it stood over underneath the eaves there twelve inches from the main part of the porch that went up, made it about thirty inches.” He then testified that the new building of the Coca-Cola Company was started around the late part of 1949, and when asked, “Will you just explain to the jury and to the court just what happened at that time”. He said, “Well, they came up there and surveyed the Coca-Cola lot and building there and had a bulldozer come in there and clean it up, and they started, they laid the foundation, then they started a wall. So, I got to checking and from the front marker that was put down there to the back and I went over and the wall I guess was about three feet high, something similar to that, and I went over to the foreman, Mr. Yates, and asked him to come over and check that thing with me. I thought he was on my land, to bring his tape, and he did, and he goes over and he stops the work on the building.
“Q. That was on the wall back of your house? A. Yes. So they call in another surveyor. That wasn’t the one that surveyed it at first. It was a young fellow, and he came up there and shot a line down from Beach Street on Taylor Avenue, and then he came on up there where we were at the shop. The whole bunch of us was there, Mr. McCracken, Mr. Yates, Mr. Tuttle, this gentleman I think with the Coca-Cola plant and unfortunately the one that run it then is dead. He told them to go ahead with the building that I had moved the stakes.”
“Q. Now you did actually call it to the attention of the contractor and representative of the Coca-Cola people that they were building their wall over on your land as soon as you noticed and was sure it was on your land ? A. That’s correct.
“Q. And they had just started the construction? A. That is right.
“Q. What happened to your overhang and your eaves and your awning *197 when the wall went up? A. The building, the wall got up to where they had to have it moved. Mr. Yates told me to move it or do something about it. So I told him he would have to move it, he could move it if he wanted to, he could have it, it wasn’t no good to me.
“Q. You did tell him he could move it? A. I told him if it was moved he could move it.
“Q. If it was going to be moved he would have to move it? A. Yes. That’s right.
“Q. So they did go ahead and move it and put the wall on up by the side of your building? A. Mr. Yates had a man come and move it and went on up with the wall.” :
Then the witness testified at some length as to the manner in which the erection Df the wall damaged his porch and his use thereof and certain changes he was required to make to prevent the water from the new wall blowing on to his porch, and was then asked, “What would you say it would be worth to you if this wall of the Coca-Cola Company just to the rear of your building as it stands today, if it was not in its particular location as it is, that you testified about, were not there, what would it be worth per month, per year, not to have it? A. Well, Mr. Hawkins, I would say the inconveniences I went through, it has gave me, and everything that I have had to go through to make it comfortable again to live in it, it ought to be worth about $100.00 a month.”
Plaintiffs’ witness, Tuttle, testified he had a business just across the street on the north side of Taylor Avenue, and was then asked: “Do you recall the instant of the time when this wall was going up and an argument came up about the boundary line?” He answered, “Yes sir I do.”
“Q. Were you present at the time Mr. Robbins told them the}'' were on his property? A. I was through part of the time. I heard him tell them that.
“Q. You heard him tell them that? A. I heard him ■ ask the man if they couldn’t stop building. They were on his property.
“Q. Were you there when the surveyor came and checked it. A. I don’t know if he surveyed at that time. I was there when I heard the surveyor tell Mr. Robbins, accused him of moving the stake he had put out there previously. Mr. Robbins said he never touched the stake.”
Then Mrs. Blanche Robbins, one of the plaintiffs, testified as follows-:
That she was present when her husband . notified the Coca-Cola Company that he thought they were on his land before the wall was completed. She was then asked, “Now Mrs. Robbins, you heard the testimony given by Mr. Robbins about the damages to the building, will you please state to the jury just exactly what did happen to the building from your observation ?
“A. Well, it is just as Mr. Robbins said. The water came in our porch and it flooded it. I had just bought new rugs and placed them down, but that water seeping under it rotted part of my rugs and had to be replaced, and it made it very inconvenient, was really dark up there. In fact, it just messed us up all the way round.
“Q. The rains came in and damaged your rugs? A. Yes, and another thing every time the rain came up I had to get out and move every stick of my furniture.
“Q. Do you recall what those rugs cost you? A. Yes sir, I really do. They cost me $39.50 a piece.
“Q. How many were there? A. Three of them 9 x 12.
“Q. Was there any damage to the floor? A. Yes. Rotted part of the porch and I can’t recall just how many new planks had to be put in that Mr. Robbins replaced, and also had to have it repainted.
*198 “Q. Would you give the jury and the court the benefit of what you feel would be'a monthly charge or yearly charge for the occupancy of your land with this wall on it, what would you say it would be? A. I would say at least $100.00, if not more.
“Q. For what period? A. $100.00 per month.”
The foregoing were all of the witnesses called by plaintiffs in the trial.
Thereupon the appellant, defendant below, produced as a witness in its behalf one L. B. Albritten, who testified that he was District Manager for defendant in 1949; that defendant contracted with Mc-Cracken & Berry to build the now existing north wall of the building between Arlington Avenue and Taylor Avenue in Day-tona Beach; that prior to hiring Mc-Cracken & Berry defendant retained the services of an engineer and surveyor to furnish a topographical survey to begin with, which they did furnish; that ■ the contractors were told to follow the information given them by the surveyor in putting up the wall and as far as he knew they did follow such survey; that before the building was started he cautioned the contractors to follow the survey; that it probably would be a good idea to have -it surveyed the morning he started the foundation; and when asked, “Did he do so”, the witness answered, “Yes.”
Defendant’s witness, W. R. McCracken, testified he was a general contractor; operated under the firm name of McCracken & Berry; that his organization was hired to build or rebuild the structure for the Coca-Cola Bottling Company between Taylor Avenue and Arlington Avenue on North Beach Street in Daytona Beach, in 1949; that prior to beginning work on the north wall of that structure where it joined Mr. Robbins’s Radiator Shop, he called a surveyor in order to determine exactly where to pour the footing; that he called Mr. Moneypenny, of Moneypenny & Stepp, who sent a crew there that day, who pointed out to the witness and Jimmie Yates, his construction superintendent, where the footing should be poured; that .he was there when the survey crew was there and observed the surveyor showing Mr. Yates where the line was, but was not there when the footing was poured;, that he helped run the line but not the actual digging or pouring, and when asked if he thereafter went to the propert)'-, the subject matter of this suit, to see if the footing had been poured correctly, he answered, “Yes”. He testified that it was his duty to supervise Mr. Yates in his job, and when asked, “Did you see whether or not he had followed the line as it had been pointed out originally?” He answered, “Yes, he took me and pointed the stake out and showed me the footings and I helped him run the line originally. Then I left and they dug for the footing- and poured the footing that same ■ day.” ■
“Q. Did you see this footing after it had been poured? A. Yes sir.
“Q. And it had been poured on the line as pointed out by the surveying crew to you? A. As far as I could tell, it was poured inside the stake.” ■
Defendant’s witness, J. N. Yates, then testified that he was job superintendent for McCracken and Berry, was in charge of the project at the time the north wall of the warehouse was constructed immediately south of Mr. Robbins’ Radiator Shop; that 'before starting the building of the wall in' question he called surveyors, Moneypenny and Stepp, who sent out a crew to check that line and that he followed the line so pointed out and put the footings where the surveyor told him the right line was; that in building this wall he put it back two inches from where the engineer checked, and he further testified that as the. wall grew in height during construction he could see that the awning of Mr. Robbins was overhanging this property that belonged to the Coca-Cola Company. He went to Mr. Robbins and made the fact known to him and he said, “All right, if its overhanging, if you want it cut off you will have to cut it off”, which he did.
*199 ■■ Defendant then produced' as- a witness one Vernon G. Stepp, who testified he was at one time connected with Moneypenny and Stepp, was engaged in business as a civil engineer and registeréd surveyor, had practiced his' profession in Florida from 1924 to 1928, and again from 1947 to date, and when shown defendant’s exhibit 1 (a map) and asked if he had anything to do . with- the preparation of that document. The witness said, “I supervised it personally.” “Q. Did you actually conduct a survey together with your crew? A. I did.”
Then the witness testified that his order was for the survey of lots 1 and 2 in Stewart’s Subdivision and lot 1 in Bungalow Court, and that required a survey of two different record plats, and after describing at length the manner in which he made these surveys and the monuments located and his findings, he testified that he established the line between the defendant’s aforesaid lots and plaintiffs’ lots 2 and 3 of Bungalow Court, and when asked to tell the court and jury if that portion of the existing building of the Coca-Cola people lies to the north of this line established on this plat, he answered, “It does not.”
The defendant’s witness, John J. Matej-ka, Jr., testified that in the fall of 1948 he was employed by Moneypenny and Stepp as party chief; that he was not then a Registered Surveyor, but had done surveying for others since 194S; that he was self-employed; he was then shown defendant’s exhibit 1; said he was familiar with it; he was then shown another plat, marked in evidence as defendant’s exhibit 3; said he was familiar with it; that the difference between-the two plats, one was before construction and the other after construction, but that they covered the same area; were prepared in the offices of Moneypenny and Stepp; that they were made on information gathered by him and Mr. Stepp. The witness then further testified that no part of the wall of the Coca-Cola Building was on Lots 2 and 3 of Bungalow Court Subdivision.
At the conclusion of the testimony plaintiffs moved for permission to amend the land description in their amended complaint so as to include therein that portion of the IY2 foot hiatus, testified to by plaintiffs’ surveyors as not included in either of the aforesaid Subdivisions as part of the description of 'the lands sued for, which motion was denied.
In charging the jury the Court, among other things, said: “I further charge you that title to the strip of land in question is not of the issue in this case. Therefore, if you find that the plaintiffs had prior possession and were ousted of the possession by the defendant, the plaintiffs should recover.” The Court further charged the jury, “If you find for the plaintiffs, the .measure of damages is the fair rental value for- the land held by the defendant from the date the defendant took possession of said land to this date.”
In'due course the jury returned the following verdict:
“We, the jury, find for the plaintiffs and find that the fee simple title to the property described in the complaint, to-wit:
“Lots No. Two (2) and Three (3), R. L. Smith and Company’s Subdivision entitled “Bungalow Court”, as per map of record in the office of the Clerk of this Court in Map Book Six (6) at page One Hundred Fifty-nine (159), Volusia County, Florida, on the 1st day of February, 1949, is and was at the institution of this suit in the said plaintiffs, and that said defendant, Florida Coca-Cola Bottling Company is in possession of IY2 feet of the said property of the plaintiffs, and further that the plaintiffs were entitled to the immediate- possession of said property at the institution of this suit, and entitled to recover the same from the defendant with damages which are assessed at $3500.00. So say we all.”
It is readily apparent that the foregoing verdict does not comply with the requirements of Section 70.05, Florida Statutes, F.S.A., in that it does not sufficiently *200 describe by metes and bounds, or otherwise, the lands which the verdict found were in the possession of the defendant, that is, IV2 feet. It does not specify in what part of lots 2 and 3 of Bungalow Court the IY2 feet described in the verdict is located and it does not state the dimensions thereof in length or otherwise, and it further appears from all the evidence in the case that the evidence is insufficient to support the verdict as to the amount found for mesne profits because there is no competent evidence in the case purporting to establish the reasonable rental or use value, or the dollar and cent damages to the plaintiffs’ property.
And the final judgment from which this appeal is taken is not in compliance with the aforesaid Section 70.05, Florida Statutes, F.S.A., in that it does not describe by metes and bounds or locate the 1 Yt feet of plaintiffs’ property adjudged to be in possession of defendant. It does not state the dimensions of or the location of said IY2 feet within the property of plaintiffs, that is, whether on the north, south, east or west portion of plaintiffs’ said property, and, second, because the evidence in this case does not support the said verdict and judgment in that the only testimony as to any encroachment by defendant’s building wall on plaintiffs’ lots 2 and 3 of Bungalow Court is that such encroachment extended approximately three inches on plaintiffs’ lot 2 at the southeast corner thereof and widens slightly from there to the east end of such wall where the encroachment extended eight-tenths on plaintiffs’ land, and this is the only narrow strip of land that could have been included within the aforesaid verdict and judgment because the only testimony in this case as to any encroachment upon plaintiffs’ land was the testimony of plaintiffs’ two surveyor witnesses, each of whom testified that there was a hiatus of a IY2 foot strip extending easterly and westerly between the south line of Bungalow Court, in which plaintiffs’ lands are located, and the north line of Stewart’s Subdivision, in which defendant’s lands are located, and no part of this IY2 foot strip described as a hiatus was described in or claimed by the plaintiffs in their complaint.
We have considered all the other questions raised on this appeal but no good purpose would be served in further discussion thereof.
From what has been said above we conclude that the judgment appealed from should be reversed for a new trial and it is so ordered.
DREW, C. J., and TERRELL and THOMAS, JJ., concur.