986 So.2d 1244 (2007)
PRO-ART DENTAL LAB, INC., etc., Petitioner,
v.
V-STRATEGIC GROUP, LLC, etc., Respondent.
No. SC07-1397.
Supreme Court of Florida.
July 10, 2008.
*1245 David H. Charlip of Charlip Law Group, LC, Hollywood, FL, and Eric A. Jacobs of Eric A. Jacobs, P.A., Hollywood, FL, for Petitioner.
Craig Barnett and Cory W. Eichhorn of Greenberg Traurig, P.A., Fort Lauderdale, FL, for Respondent.
LEWIS, J.
This case is before the Court for review of the decision of the Fourth District Court of Appeal in Pro-Art Dental Lab, Inc. v. V-Strategic Group, LLC, 959 So.2d 753 (Fla. 4th DCA 2007), in which the *1246 Fourth District certified conflict with the decision of the Fifth District Court of Appeal in Crocker v. Diland Corp., 593 So.2d 1096 (Fla. 5th DCA 1992). The certified conflict involves the interaction of summary proceedings under chapter 51, Florida Statutes (2006), and Florida Rule of Civil Procedure 1.500(c).[1]See Pro-Art, 959 So.2d at 756-57. We have and exercise our jurisdiction to resolve this conflict. See art. V, section 3(b)(4), Fla. Const. For the reasons explained below, we quash the decision of the Fourth District in Pro-Art and approve the decision of the Fifth District in Crocker.

I. BACKGROUND
This case stems from a procedurally convoluted commercial landlord-tenant dispute between the plaintiff-respondent, V-Strategic Group, LLC (landlord), and the defendant-petitioner, Pro-Art Dental Lab, Inc. (tenant). The rental property is located at 2101 East Hallandale Beach Boulevard, Suite 302, Hallandale, Florida ("the Hallandale property"). V-Strategic's predecessor-in-interest, 1651 North Collins Corp., entered into a lease agreement with Pro-Art on or about March 20, 2000. The lease included a base six-year term, which was scheduled to cover the period from April 1, 2000, until March 31, 2006. The lease also afforded Pro-Art the right to extend the rental term for an additional five-year period. To exercise this renewal option, Pro-Art was required to provide 1651 North Collins Corp. with written notice at least 180 days (i.e., approximately six months) before March 31, 2006. On or about June 16, 2005, Pro-Art properly and timely exercised its renewal option to extend the rental term.
1651 North Collins Corp. later sold this Hallandale property to V-Strategic. This transaction included an assignment of the lease. V-Strategic purchased the Hallandale property for redevelopment purposes and appears to have been intent on attempting to vacate any existing tenants. On July 22, 2005, V-Strategic's counsel faxed Pro-Art's counsel an offer for early termination of the lease. In response, Pro-Art's counsel sent a letter dated August 25, 2005, which V-Strategic has characterized as a counter-offer, but which may more properly be characterized as "preliminary negotiation." See generally Webster Lumber Co. v. Lincoln, 94 Fla. 1097, 115 So. 498 (Fla.1927); Restatement (Second) of Contracts §§ 26-27 (1981).[2] The letter of August 25, which was not signed by any officer of Pro-Art, included the following items:
1) Pro-Art would remain an occupying tenant and would continue paying rent until February 2006 or until Pro-Art secured an alternative rental property, whichever occurred sooner.
2) Pro-Art would agree to an early termination of its lease (which, as extended, would not expire until 2011).
3) V-Strategic would pay Pro-Art $95,000 as consideration for the early termination to be deposited in the trust account of Pro-Art's counsel until Pro-Art vacated the premises.

4) V-Strategic and Pro-Art would each execute general releases of the other with regard to the Hallandale lease.
*1247 This letter from counsel concluded by stating that "[i]f this agreement is acceptable, please let [counsel] know and we can draft the appropriate agreement. Otherwise, my client [Pro-Art] intends to remain as a tenant until 2011 [.]" (Emphasis supplied.) In a letter dated October 13, 2005, Juan Carlos Ventura, managing member of V-Strategic, addressed Pro-Art's president directly and claimed to confirm the prior understanding of counsel that V-Strategic would accept Pro-Art's counter-offer:
We [V-Strategic] have been advised by our attorney, Mr. Santiago Eljaiek III, that you [Marina Del Toro, President and Registered Agent of Pro-Art,] have provided a counter-offer to our initial offer that would terminate your Lease as of February 28, 2006[,] in exchange for $95,000.00. As Mr. Eljaiek has already advised [counsel for Pro-Art], we are in agreement with and accept your counter-offer. Accordingly, this letter shall confirm our understanding that we shall be paying the $95,000.00 as you direct immediately upon your vacating of the Premises. Again, we thank you and appreciate your understanding and cooperation with our proposed development of our Project.
(Emphasis supplied.) V-Strategic contends that Pro-Art's alleged "counter-offer" letter and V-Strategic's alleged "acceptance" letter constituted a completed termination agreement. The record does not contain the "appropriate agreement" or releases referenced in the alleged "counter-offer," there is no indication that the parties ever drafted these documents, and V-Strategic's alleged "acceptance" of the purported counter-offer altered a term of performance (i.e., the method of payment concerning the $95,000 lease-termination consideration).[3] Further, neither the underlying lease agreement nor Pro-Art's written notice of extension appears to have been produced during this litigation. Pro-Art continues to contest the existence of a valid termination agreement.[4]
As a result of these events, V-Strategic assumed the position that Pro-Art was required to terminate its occupancy as of February 2006 at the latest. However, Pro-Art continued to occupy the Hallandale property and asserted that V-Strategic had not tendered the required consideration (i.e., the $95,000) and that no properly executed termination agreement existed. On April 3, 2006, V-Strategic filed a single-count complaint in Broward County Court specifically seeking relief styled ejectment, a judgment of possession and damages,[5] and an award of costs and *1248 attorneys' fees. V-Strategic did not attach any type of agreement signed by an appropriate representative of Pro-Art; instead, all that was attached was a letter from Pro-Art's former counsel and a letter from the managing member of V-Strategic. Cf. Fla. R. Civ. P. 1.130(a)-(b); §§ 689.01, 692.01, 692.02, Fla. Stat. (2006). V-Strategic attempted to proceed under the summary procedure provided in section 51.011, Florida Statutes (2006). On April 4, 2006, V-Strategic caused Pro-Art to be served with a five-day eviction summons, which also expressly stated that V-Strategic sought "ejectment." (Emphasis supplied.) If section 51.011 applied to ejectment actions (which it does not), Pro-Art would have had until April 11, 2006,[6] to file an answer containing "all [of its] defenses of law or fact." See § 51.011(1), Fla. Stat. (2006). On April 7, 2006, Pro-Art filed a Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Motion to Quash Service of Process, but did not file an answer or assert any affirmative defenses. In its motion to dismiss, Pro-Art correctly contended that (1) the county court lacked subject-matter jurisdiction because section 26.012(2)(f), Florida Statutes (2006), vests circuit courts, not county courts, with exclusive original jurisdiction to entertain ejectment actions and (2) the mode of procedure was improper because section 51.011's summary procedure does not apply to ejectment actions under chapter 66, Florida Statutes (2006).
On April 28, 2006, the county court conducted a hearing on Pro-Art's motion to dismiss. During the hearing, counsel for V-Strategic orally moved for default based on Pro-Art's alleged failure to comply with the five-day response period of section 51.011(1). At the conclusion of the hearing, the county court orally denied Pro-Art's motion to dismiss and indicated that the mandatory five-day response period likely required the entry of default against Pro-Art. Nevertheless, the court allowed Pro-Art three days to prepare a response to V-Strategic's ore tenus motion for default. Immediately following the April 28 hearing, Pro-Art filed an answer and a series of affirmative defenses, which included a denial of V-Strategic's claim that a valid lease-termination agreement exists in this case. The answer would have been timely under the Florida Rules of Civil Procedure, which apply during ejectment actions. See Fla. R. Civ. P. 1.140(a)(2) (establishing a 10-day response period for service of an answer after a court's ruling on a motion to dismiss).
On May 1, 2006, the county court held a hearing on V-Strategic's motion for default. Pro-Art renewed its contention that the county court lacked subject-matter jurisdiction to entertain ejectment actions. Without notice to either of the parties, the county court sua sponte amended V-Strategic's complaint by finding that "[t]he way *1249 I see this case, even though [V-Strategic] calls it ejectment, [the case] really more is in the nature of ... a tenant at sufferance[.]" (Emphasis supplied.)
Having lost the battle with regard to the county court's lack of subject-matter jurisdiction, Pro-Art next asserted that the plain text of section 51.011 provides that the "[r]ules of [civil] procedure apply to this section except when this section or the statute or rule prescribing this section provides a different procedure" and that section 51.011 does not provide a procedure with regard to the effect of an answer filed outside of the five-day response period but filed before the entry of default. § 51.011, Fla. Stat. (2006) (emphasis supplied). Therefore, according to Pro-Art, Florida Rule of Civil Procedure 1.500(c) and supporting case law supply the missing procedure during chapter 51 proceedings with regard to the effect of an untimely answer filed before the entry of default. Under that rule "`[a] party may plead or otherwise defend at any time before default is entered.' A default is, therefore, improper when a party has filed a responsive pleading prior to the entry of default." TLC Trust v. Sender, 757 So.2d 570, 571 (Fla. 4th DCA 2000) (emphasis supplied) (quoting Fla. R. Civ. P. 1.500(c)). V-Strategic countered that incorporating rule 1.500(c) into section 51.011 proceedings would undermine the purpose and utility of the summary-eviction process, which enables the prompt resolution of eviction disputes under abbreviated procedures. The county court granted V-Strategic's motion, entered default against Pro-Art, ordered that a final judgment of possession be entered in favor of V-Strategic, and directed the clerk to issue a writ of possession. On May 3, 2006, the executing sheriff involuntarily dispossessed Pro-Art of the Hallandale property.[7]
Pro-Art sought review of the Default Order and Final Judgment of Possession in the Broward County Circuit Court. In an opinion dated November 27, 2006, the circuit court affirmed the order and judgment of the county court. In interpreting the county court's vague jurisdictional findings, the circuit court held that (1) even though V-Strategic's complaint was specifically designated and specifically sought ejectment, it functionally sought removal of a tenant under section 83.21, Florida Statutes (2006), rather than ejectment under chapter 66 (despite the fact that the summons and complaint explicitly sought ejectment and never referred to section 83.21); (2) section 83.21 permits resort to the summary procedure provided in section 51.011; and (3) sections 83.21 and 34.011, Florida Statutes (2006), vest county courts with subject-matter jurisdiction to entertain tenant-removal actions.
Pro-Art then filed a petition for writ of certiorari in the Fourth District Court of Appeal, which denied the petition and held that "under the summary procedure of section 51.011 ... the county court properly entered a default against the tenant after disposing of the tenant's defensive motion." Pro-Art, 959 So.2d at 754. The district court further held:
By its plain language, section 51.011(1) requires defendants to file all defenses of law or fact in an answer within five days of being served....

*1250 By not filing its answer within five days of being served, the tenant in the instant case waived its additional defenses. Accordingly, after denying the tenant's motion to dismiss, the trial court properly accepted the allegations in the landlord's complaint as true and appropriately entered a final judgment for possession in favor of the landlord.
Id. at 756 (emphasis supplied). In response to Pro-Art's motion for rehearing, the Fourth District certified conflict with the Fifth District's decision in Crocker v. Diland Corp., 593 So.2d 1096 (Fla. 5th DCA 1992), and stated:
Rule 1.500(c) allows a defendant to file an answer "at any time before a default is entered." Crocker applies this rule in a Chapter 51 case.
Such an application of rule 1.500(c) would allow, as a matter of routine, the filing of answers after five days of service of process. The practice Crocker condones contravenes the mandatory time limit of section 51.011(1).
Id. at 757.
Pro-Art has requested this Court to resolve the certified conflict between Pro-Art and Crocker. Throughout these proceedings, Pro-Art has consistently challenged (1) the existence of a valid lease-termination agreement, and (2) the county court's subject-matter jurisdiction to entertain an ejectment action. These issues have been consistently overlooked by the appellate courts based on the county court's entry of a default against Pro-Art, which the circuit court and the Fourth District approved based upon sections 51.011 and 83.21, Florida Statutes (2006). Our review of this certified conflict thus centers upon two principal issues: (1) the appropriate outcome when a party seeks to proceed under the summary procedure of section 51.011, but pleads a cause of action that is not subject to prosecution under that section (e.g., ejectment); and (2) the proper relationship between chapter 51 summary proceedings and Florida Rule of Civil Procedure 1.500(c). In the following analysis, we (a) explain why the county court lacked subject-matter jurisdiction to entertain this ejectment action, and (b) hold that rule 1.500(c) generally applies during chapter 51 summary proceedings.

II. ANALYSIS

A. Ejectment Subject-Matter Jurisdiction and Due Process
The first issue we must confront is whether the county court possessed subject-matter jurisdiction to even consider this ejectment action. We conclude that Florida's county courts lack subject-matter jurisdiction to entertain ejectment actions. Furthermore, we conclude that a county court may not  consistent with due process-vest itself with subject  matter jurisdiction by sua sponte judicially amending an ejectment complaint to state a cause of action under section 83.21, Florida Statutes (2006).
In Florida, commercial landlords possess three separate, yet somewhat overlapping, remedies for removing a tenant who holds over after the expiration of a lease. See generally Nicholas C. Glover, Florida Commercial Landlord Tenant Law §§ 4.03-.07 (2007 ed.). These remedies are: first, the historic common-law remedy of ejectment, which the Legislature codified in 1967, see ch. 67-254, § 21, Laws of Fla.; § 66.021, Fla. Stat. (2006); second, an unlawful-detainer action under section 82.04, Florida Statutes (2006); and finally, a tenant-removal action under section 83.21, Florida Statutes (2006). Suffice it to say that while these actions may certainly be similar in some respects, a number of their pleading requirements differ, *1251 as may the forum in which the plaintiff is required file the appropriate complaint.
For purposes of this decision, there are two relevant distinctions between these causes of action. First, ejectment actions are subject to the exclusive original jurisdiction of Florida's circuit courts, while county courts generally possess subject-matter jurisdiction in unlawful-detainer and tenant-removal actions (subject to their amount-in-controversy limit). Compare art. V, § 20(c)(3), Fla. Const., and § 26.012(2)(f), Fla. Stat. (2006) (vesting circuit courts with exclusive original jurisdiction in ejectment actions), with § 34.011(1)-(2), Fla. Stat. (2006) (vesting county courts with concurrent jurisdiction in tenant-removal actions and exclusive original jurisdiction in unlawful-detainer actions if within the county-court amount-in-controversy limit). Second, the summary procedure of section 51.011 applies during an unlawful-detainer or tenant-removal action but does not apply during an ejectment action. Compare § 82.04(1), Fla. Stat. (2006) (stating that section 51.011 applies to unlawful-detainer actions), and § 83.21, Fla. Stat. (2006) (stating that section 51.011 applies to tenant-removal actions), with ch. 66, Fla. Stat. (2006) (never mentioning section 51.011 explicitly or otherwise).
Given the facts of this case, and assuming compliance with the amount-in-controversy requirement, V-Strategic could have filed either an ejectment action in circuit court, an unlawful-detainer action in county court, or a tenant-removal action in county court. See §§ 26.012(2)(f), 34.011, Fla. Stat. (2006); see also §§ 66.021 (ejectment), 82.04-.05 (unlawful detainer), 83.20-.21(tenant removal or eviction), Fla. Stat. (2006); Fla. R. Civ. P. Forms 1.940 (ejectment complaint), 1.938 (unlawful-detainer complaint), 1.947 (eviction complaint); Bailey v. Bailey, 114 So.2d 804, 805 (Fla. 1st DCA 1959) (outlining the elements of an ejectment claim); Partridge v. Partridge, 940 So.2d 611, 613 n. 2 (Fla. 4th DCA 2006) (substantially similar); Glover, supra §§ 4.03-.05 (describing ejectment, unlawful detainer, and tenant removal).[8] Notwithstanding its apparent ability to file an unlawful-detainer or tenant-removal claim in county court, V-Strategic did not do so and, instead, specifically designated the claim and filed papers as a suit in "ejectment."[9]
As the drafter of its complaint, V-Strategic made the conscious decision to seek ejectment, along with a damages claim, in a county court despite the fact that ejectment actions are subject to the exclusive original jurisdiction of Florida's circuit courts. See art. V, § 20(c)(3), Fla. Const.; § 26.012(2)(f), Fla. Stat. (2006). Pro-Art may challenge the county court's subject-matter jurisdiction at any time, and has chosen to do so at every stage of this litigation. See Fla. R. Civ. P. 1.140(b), *1252 (h)(2); Philip J. Padovano, 5 West's Fla. Practice Series § 1.4 (2007-08 ed.) (a party may challenge a court's subject-matter jurisdiction at any time, even on appeal). We take this opportunity to remind civil litigants that "[a] complaint is ... essential to initiate an action.... [I]ts purpose is to invoke the subject matter jurisdiction of the court and to give notice of the claim." Paulucci v. Gen. Dynamics Corp., 842 So.2d 797, 800 (Fla.2003) (emphasis supplied) (quoting Gen. Dynamics Corp. v. Paulucci, 797 So.2d 18, 21 (Fla. 5th DCA 2001), quashed on other grounds, 842 So.2d 797 (Fla.2003)). Having specifically and exclusively pled ejectment, V-Strategic and the county court lacked discretion to unilaterally amend the complaint during a hearing on a motion to dismiss in derogation of Pro-Art's substantive rights. See, e.g., Lovett v. Lovett, 93 Fla. 611, 112 So. 768, 775-76 (1927) ("The jurisdiction and power of a court remain at rest until called into action by some suitor; it cannot, by its own action, institute a proceeding sua sponte. The action of a court must be called into exercise by pleading and process, prescribed or recognized by law[.]" (emphasis supplied)); see also Fla. R. Civ. P. 1.190 ed. cmt. ("Amendments under paragraph (b) of this rule ["Amendments to Conform with the Evidence"] can be made at any time but they must not prejudice the opposing party." (emphasis supplied)).
"Florida law clearly holds that a trial court lacks jurisdiction to hear and to determine matters which are not the subject of proper pleading and notice," and "[t]o allow a court to rule on a matter without proper pleadings and notice is violative of a party's due process rights." Carroll & Assocs., P.A. v. Galindo, 864 So.2d 24, 28-29 (Fla. 3d DCA 2003) (emphasis supplied) (quoting In re Estate of Hatcher, 439 So.2d 977, 980 (Fla. 3d DCA 1983)) (citing Epic Metals Corp. v. Samari Lake E. Condo. Ass'n, Inc., 547 So.2d 198, 199 (Fla. 3d DCA 1989); Robinson v. Malik, 135 So.2d 445, 445 (Fla. 3d DCA 1961)). Pro-Art is thus correct that the county court lacked subject-matter jurisdiction to entertain the ejectment action that V-Strategic specifically sought through its "ejectment" summons and "ejectment" complaint. See art. V, § 20(c)(3), Fla. Const.; § 26.012(2)(f), Fla. Stat. (2006). As plaintiff, V-Strategic chose its cause of action (ejectment). However, the ejectment complaint was materially deficient because it did not specifically deraign V-Strategic's title dating from the common source of its and Pro-Art's property interests. See § 66.021(4), Fla. Stat. (2006). Additionally, the ejectment judgment was arguably defective because it did not specifically describe the property at issue as required under section 66.031, Florida Statutes (2006), and the decision of this Court in Florida Coca-Cola Bottling Co. v. Robbins, 81 So.2d 193, 199-200 (Fla.1955) (requiring either an accurate metes-and-bounds description or an accurate description based upon the relevant county property records).
As stated in an editor's comment to the Rules of Civil Procedure,
[u]nder the Florida Rule, vague and loose pleading will not be permitted. The complaint must show a legal liability by stating the elements of a cause of action [and] must plead factual matter sufficient to apprise the adversary of what he is called upon to answer so that the court may determine the legal effect of the complaint.

Fla. R. Civ. P. 1.110 ed. cmt. (emphasis supplied). V-Strategic expressly and exclusively pled ejectment; therefore, Pro-Art justifiably tailored its motion to dismiss to that action  Florida's county courts lack subject-matter jurisdiction to *1253 entertain ejectment actions. V-Strategic possessed a clear strategic motive for pleading ejectment (e.g., the ability to obtain possession, damages, and costs through a single cause of action, see § 66.021(3), Fla. Stat. (2006)), and it certainly exercised that option by including all of those items in its complaint. However, V-Strategic simply sought that relief in the wrong court, applied an incorrect procedure (section 51.011, Florida Statutes (2006)), and failed to comply with the mandatory requirements for ejectment provided in sections 66.021 and 66.031, Florida Statutes (2006). Section 51.011 states that "[t]he procedure in this section applies only to those actions specified by statute or rule." (Emphasis supplied.) However, neither section 51.011, chapter 66, nor the Rules of Civil Procedure state that section 51.011 applies to ejectment actions; therefore, the standard Rules of Civil Procedure apply in such actions. See § 51.011, Fla. Stat. (2006); chapter 66, Fla. Stat. (2006).
V-Strategic had the ability to select the items and relief sought in its ejectment action and it had the option to plead a different cause of action if so desired. However, since it did not, Pro-Art responded properly by notifying both V-Strategic and the county court that Florida's circuit courts possess exclusive original jurisdiction in ejectment actions. See, e.g., Connolly v. Sebeco, Inc., 89 So.2d 482, 484 (Fla.1956) ("The purpose of a complaint is to advise the Court and the defendant of the nature of a cause of action asserted by the plaintiff."); Parker v. Panama City, 151 So.2d 469, 472 (Fla. 1st DCA 1963) ("[T]he function of the complaint is to accurately inform the defendant and the court of the nature of plaintiff's claim. ... The overriding requirement is that claimant's pleadings be sufficiently clear and direct to make it unnecessary for the respondent or the court to be clairvoyant in ascertaining the nature of the claim." (emphasis supplied)).
In sum, V-Strategic's specific "ejectment" summons and specific "ejectment" complaint failed to provide Pro-Art with notice that it faced (1) a chapter 83 tenant-removal action and (2) an altered time period for that distinct, non-pled cause of action. The county court's sua sponte, oral amendment of the complaint during the hearing on Pro-Art's Motion to Dismiss for Lack of Subject-Matter Jurisdiction thus violated Pro-Art's right to procedural due process and its right to seek meaningful relief in the courts of this State. See art. I, §§ 9, 21, Fla. Const. Due to this improper, sua sponte amendment, Pro-Art faced a procedural mechanism which is foreign to ejectment actions (section 51.011, Florida Statutes (2006)) and, as a result, suffered an unwarranted default judgment when it was ready to defend against this action as pled in V-Strategic's ejectment complaint. Cf. J.B. v. Fla. Dep't of Children & Fam. Servs., 768 So.2d 1060, 1064 (Fla.2000) ("Procedural due process under the Florida Constitution guarantees to every citizen the right to have that course of legal procedure which has been established in our judicial system for the protection and enforcement of private rights. It contemplates that the defendant shall be given fair notice and afforded a real opportunity to be heard and defend in an orderly procedure, before judgment is rendered against him." (emphasis supplied) (empty brackets omitted) (quoting Dep't of Law Enforcement v. Real Property, 588 So.2d 957, 960 (Fla.1991))). Therefore, Pro-Art is entitled to defend itself in this case on the merits, assuming that V-Strategic properly amends its complaint to state a cause of action in a court of this State that possesses each of the following: personal jurisdiction, subject-matter jurisdiction, *1254 and venue. Cf. Pensacola Wine & Spirits Distillers, Inc. v. Gator Distribs., Inc., 448 So.2d 34, 35 (Fla. 1st DCA 1984) (where plaintiff improperly pled a tenant-removal action instead of an ejectment action, the district court held that the trial court should have permitted both parties to amend their pleadings). Thus far, this has not occurred in this case.
Accordingly, for two principle reasons, we quash the decision of the Fourth District Court of Appeal and direct that court to remand to the county court for further proceedings consistent with this opinion. First, the county court lacked subject-matter jurisdiction to consider an ejectment action. Second, that court did not possess the authority to sua sponte amend V-Strategic's complaint for the purpose of avoiding this jurisdictional defect without also granting Pro-Art the corresponding opportunity to submit a responsive pleading and defend on the merits.

B. Chapter 51 and the Rules of Civil Procedure
Despite our holding that the county court lacked ejectment subject-matter jurisdiction and that section 51.011 does not apply during ejectment actions, Pro-Art and Crocker, as written, still stand in conflict. Cf. Yisrael v. State, 986 So.2d 491, 494, n. 4 (Fla. 2008), corrected on denial of rehearing, No. SC06-2211, ___ So.2d at ___ (Fla. July 10, 2008) (addressing certified-conflict issue notwithstanding the fact that a central piece of documentary evidence, which the district court misapprehended, could have avoided conflict). Moreover, it is important to clarify and resolve this conflict for the courts and practitioners of this State. Therefore, we must address whether Florida Rule of Civil Procedure 1.500(c) applies during chapter 51 summary proceedings. As explained in the following analysis, we conclude that this rule of procedure does apply to cases filed pursuant to chapter 51 unless the statute creating the cause of action specifically states otherwise.
The procedures provided in chapter 51 and the Florida Commercial Landlord-Tenant Act (i.e., part I of chapter 83, Florida Statutes (2006)) are limited in their nature and scope. Therefore, it is not surprising that section 51.011  the only section in chapter 51  expressly states that the "[r]ules of [civil] procedure apply to this section except when this section or the statute or rule prescribing this section provides a different procedure." (Emphasis supplied.) Hence, chapter 51 itself explicitly provides that the Rules of Civil Procedure apply unless section 51.011 or the statute creating the cause of action supply a contrary mode of procedure. See § 51.011, Fla. Stat. (2006). The statute that V-Strategic claims governs the entire ambit of chapter 51 summary proceedings is nothing more than a five-part statute that: (1) alters the general pleading-response period (five instead of twenty days); (2) offers only limited rights to discovery (only depositions are available as of right, other discovery is available by court order); (3) curtails the amount of time a party possesses to demand a jury trial ("not later than" five days "after the action comes to issue"); (4) establishes the time within which a party must file a motion for a new trial (five days post-verdict or post-judgment); and (5) establishes the time in which a party may appeal the verdict or judgment entered in the trial court (within thirty days therefrom). See § 51.011(1)-(5), Fla. Stat. (2006). Given this limited set of procedures, the Legislature provided that the Rules of Civil Procedure generally apply to chapter 51 proceedings. See § 51.011, Fla. Stat. (2006).
To date, only two decisions have expressly addressed this issue: Crocker v. *1255 Diland Corp., 593 So.2d 1096, 1099-1100 (Fla. 5th DCA 1992) (holding that rule 1.500(c) applies to chapter 51 summary proceedings), and Pro-Art Dental Lab, Inc. v. V-Strategic Group, LLC, 959 So.2d 753, 755-57 (Fla. 4th DCA 2007) (holding that rule 1.500(c) does not apply to such proceedings). In Crocker, the defendant asserted a counterclaim (a chapter 82 unlawful-entry action), which was subject to the summary procedure of section 51.011. See 593 So.2d at 1097. Eighteen days following service of the counterclaim, the defendant moved for default based on the failure of the plaintiff to answer the counterclaim within the five-day period prescribed in section 51.011(1). See id. A little over a month later, the plaintiff filed a motion to dismiss the counterclaim. See id.
At a hearing on the motion for default, the defendant argued that section 51.011 required that the trial court enter judgment in its favor on the counterclaim because that section "required an answer within five days and no other responsive pleadings were permitted, [thus] [the plaintiff's] motion to dismiss was a nullity." See id. In response, the plaintiff argued that section 51.011 does not prevent defensive-motion practice. The plaintiff further argued that because section 51.011 did not explicitly preclude motion practice, Florida Rule of Civil Procedure 1.140 supplied the missing procedural practices. See id. The Fifth District first held that while section 51.011 explicitly contemplates some form of motion practice, the tolling provision of rule 1.140(a) would "emasculate" the summary procedure of chapter 51. Id. at 1099-1100. The Fifth District went on to decide a second issue, which is the holding upon which the Fourth District certified conflict in Pro-Art. See Crocker, 593 So.2d at 1100; Pro-Art, 959 So.2d at 756-57. The Crocker court held that while the plaintiff should have presented all of its defensive motions in an answer to the defendant's counterclaim, its untimely motion to dismiss was truly a defective answer, which prevented the imposition of an eo instante (i.e., instantaneous) default. See Crocker, 593 So.2d at 1100 (citing Fla. R. Civ. P. 1.500(c); Irwindale Co., N.V. v. Three Islands Olympus, 474 So.2d 406 (Fla. 4th DCA 1985)). The court stated:
Contrary to [the defendant's] position, we cannot agree that [the plaintiff's] motion was a "nullity." [The plaintiff] did plead or otherwise defend prior to the hearing on the default motion. Unless given leave to amend by the trial court, however, it would be that single statement of defenses on which [the plaintiff] would be obliged to defend at the expedited trial.

Id. (emphasis supplied). Thus, leave to amend remained in the discretion of the trial court and the defendant was not entitled to an automatic default.
In contrast, in Pro-Art, the Fourth District held that sections 51.011 and 83.21, Florida Statutes (2006), eliminate all forms of motion practice and mandate the entry of an instantaneous default  without opportunity to be heard  if a defendant does not serve a responsive pleading within five days of having received the plaintiff's complaint:
By its plain language, section 51.011(1) requires defendants to file all defenses of law or fact in an answer within five days of being served. Thus, in a summary proceeding, a motion to dismiss does not toll the time to file an answer; the proper method of raising defenses usually asserted in a motion to dismiss is to incorporate them in an answer.

By not filing its answer within five days of being served, the tenant in the instant case waived its additional defenses. Accordingly, after denying the *1256 tenant's motion to dismiss, the trial court properly accepted the allegations in the landlord's complaint as true[[10]] and appropriately entered a final judgment for possession in favor of the landlord.
959 So.2d at 756 (emphasis supplied).
Section 51.011(1) provides as follows (as supplemented by our bracketed notations):
Pleadings.  Plaintiff's initial pleading shall contain the matters required by the statute or rule prescribing this section or, if none is so required, shall state a cause of action. All defenses of law or fact shall be contained in defendant's answer which shall be filed within 5 days after service of process [Florida Rule of Civil Procedure 1.140(b) contains substantially similar language: "Every defense in law or fact to a claim for relief in a pleading shall be asserted in the responsive pleading"]. If the answer incorporates a counterclaim, plaintiff shall include all defenses of law or fact in his or her answer to the counterclaim and shall serve it within 5 days after service of the counterclaim. No other pleadings are permitted [rule 1.100(a) contains substantially similar language: "No other pleadings shall be allowed"]. All defensive motions, including motions to quash, shall be heard by the court prior to trial [the statute thus explicitly contemplates some form *1257 of motion practice; further this language is similar to that of rule 1.140(d) ].
(Emphasis supplied.) The plain text of the statute does not mandate the holding of the Fourth District in Pro-Art. The Legislature largely borrowed language from the Rules of Civil Procedure and simply altered the required time for responding to a pleading (five days instead of the normal ten or twenty afforded under rule 1.140(a)(1)-(3)). Moreover, the Legislature did not define with precision the divide, if any, that it envisioned between the defenses a party must assert in his or her answer as opposed to those that are generally permitted under the motion practice outlined in rule 1.140(b), (c), (e), and (f), many of which are likely permissible "procedural" motions within the language of Crocker. See 593 So.2d at 1100 ("Most likely, the defensive motions contemplated by the statute are those that raise procedural issues, such as a motion to quash, the example given in the statute.").
At best, it is not clear that the Legislature intended to abrogate all motion practice in enacting section 51.011, given that motions are not "pleadings"[11] and that the statute itself (1) does not explicitly provide a competing procedure, (2) states that the Rules of Civil Procedure "apply to this section except when this section or the statute or rule prescribing this section provides a different procedure," and (3) mandates that "[a]ll defensive motions, including motions to quash, shall be heard by the court prior to trial." (Emphasis supplied.) The phrase "including motions to quash" logically implies that motions to quash are included in addition to, not to the exclusion of, other permissible motions. See, e.g., Fed. Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 100, 62 S.Ct. 1, 86 L.Ed. 65 (1941) ("[T]he term `including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." (emphasis supplied)); see also Black's Law Dictionary 777-78 (8th ed.2004) (defining the generally illustrative participle "including"). These other motions are apparently permitted under section 51.011. It is doubtful that the Legislature would have incorporated the term "including," if the language "motions to quash" was intended to be an exhaustive description of the motion practice permitted under section 51.011. See, e.g., Koile v. State, 934 So.2d 1226, 1231 (Fla.2006) ("[P]rovisions in a statute are not to be construed as superfluous if a reasonable construction exists that gives effect to all words and provisions." (citing State v. Goode, 830 So.2d 817, 824 (Fla.2002))).
It is also not clear that a form of motion practice during chapter 51 proceedings would undermine this summary procedure. Cf. Dade Realty Corp. v. Schoenthal, 149 Fla. 674, 6 So.2d 845, 846 (1942) ("Landlord and tenant or distress proceedings as provided by [predecessor statutes], are summary in nature and were provided for the purpose of giving a landlord speedy relief where (1) the tenant defaults in payment of rent under his contract, or (2) where he stays on and refuses to vacate the premises after the expiration of his rental contract."). The current Rules of Civil Procedure already prevent a dilatory string of motions by requiring that a party present all defensive motions other than *1258 motions for judgment on the pleadings, motions to dismiss for failure to state a cause of action or legal defense, motions to dismiss for failure to join an indispensable party, and motions to dismiss for lack of subject-matter jurisdiction in a single package either as a pretrial motion or in a responsive pleading. See Fla. R. Civ. P. 1.140(h).
The plain text of section 51.011 does not provide for instantaneous defaults in the event a party has filed a defensive motion and thereafter an untimely responsive pleading. The Legislature merely borrowed similar language from a portion of rule 1.140(a)(1) and substituted "5 days" for "20 days." Compare Fla. R. Civ. P. 1.140(a)(1) ("[a] defendant shall serve an answer within 20 days after service of original process and the initial pleading on the defendant" (emphasis supplied)), with § 51.011(1) (a defendant's answer "shall be filed within 5 days after service of process" (emphasis supplied)). Section 51.011 must be read in conjunction with the Rules of Civil Procedure and the statute creating the cause of action. See § 51.011, Fla. Stat. (2006).
While the Legislature did not provide for instantaneous defaults in enacting section 51.011, it did provide for a solitary instance of instantaneous default under the Commercial Landlord-Tenant Act. Specifically, the Legislature has directed that the

[f]ailure of the tenant to pay ... rent into the court registry pursuant to court order shall be deemed an absolute waiver of the tenant's defenses. In such case, the landlord is entitled to an immediate default for possession without further notice or hearing thereon.

§ 83.232(5), Fla. Stat. (2006) (emphasis supplied). This appears to be the substance of the reasoning that the Fourth District attempted to apply to untimely answers in Pro-Art. See 959 So.2d at 756 ("By not filing its answer within five days of being served, the tenant in the instant case waived its additional defenses."). However, this statute is explicitly restricted to the failure to pay rent. Where the Legislature has explicitly provided for an instantaneous default with regard to the nonpayment of rent during the pendency of the commercial tenant-removal action, but has not so provided with regard to the filing of an untimely motion or pleading before the entry of default, the Court should presume that this omission was intentional. "Under the canon of statutory construction expressio unius est exclusio alterius, the mention of one thing implies the exclusion of another." State v. Hearns, 961 So.2d 211, 219 (Fla.2007) (explaining the interpretive significance of the Legislature's listing of only two types of "battery" under section 776.08, Florida Statutes (2006)). Had the Legislature intended for a commercial tenant who is current on his or her rental obligation, and who has belatedly filed a responsive pleading or defensive motion, to suffer an instantaneous default, it would have explicitly provided for such a severe sanction. Section 51.011 simply does not contain any language providing for instantaneous defaults. Any alteration thereof should not be by judicial decision.
Neither section 51.011, part I of chapter 83, nor the Rules of Civil Procedure explicitly state that rule 1.500(c) does not apply to section 83.21 tenant-removal actions; therefore, this rule should apply in this context. See § 51.011, Fla. Stat. (2006); Fla. R. Civ. P. 1.010 ed. cmt. ("By being applicable to all suits of a civil nature, the civil rules cover not only law and equity, tort and contract, but also special statutory proceedings and proceedings under the various extraordinary writs which have been classified as civil in nature." (emphasis supplied)). Rule 1.500(c) provides as follows: "A party may plead or otherwise defend at any time before default is entered." *1259 (Emphasis supplied.) When the rule has been applied in general civil actions, the intermediate appellate courts of this State have uniformly interpreted rule 1.500(c) as providing that the entry of default is improper when a party has filed a responsive pleading or otherwise defended before the entry of default. See, e.g., Becker v. Re/Max Horizons Realty, Inc., 819 So.2d 887, 890 (Fla. 1st DCA 2002); Pinnacle Corp. of Cent. Fla., Inc. v. R.L. Jernigan Sandblasting & Painting, Inc., 718 So.2d 1265, 1266 (Fla. 2d DCA 1998); Chester, Blackburn & Roder, Inc. v. Marchese, 383 So.2d 734, 735 (Fla. 3d DCA 1980); TLC Trust v. Sender, 757 So.2d 570, 571 (Fla. 4th DCA 2000); Carder v. Pelican Cove W. Homeowners Ass'n, Inc., 595 So.2d 174, 174-75 (Fla. 5th DCA 1992); see also Henry P. Trawick, Trawick's Florida Practice and Procedure § 25.2 (2007-08 ed.) ("Until the default is entered, a party can serve a proper motion or pleading and avoid a default. The right to plead before entry of a default is the same as at common law."). Applying this rule here leads to the conclusion that a default is improper when a party has filed a responsive pleading or otherwise defended before the entry of default. See § 51.011, Fla. Stat. (2006). Accordingly, the rule from Crocker explains the appropriate relationship between chapter 51 summary proceedings and rule 1.500(c):
[I]f a party who has appeared fails to timely plead, but does plead or otherwise defend before the hearing on the motion for default, a default is improper.
[However,] [u]nless given leave to amend by the trial court, ... it would be that single statement of defenses on which [the party] would be obliged to defend at the expedited trial.
593 So.2d at 1100 (citations omitted).

III. CONCLUSION
With regard to the conflict issue, we quash the decision of the Fourth District in Pro-Art Dental Lab, Inc. v. V-Strategic Group, LLC, 959 So.2d 753 (Fla. 4th DCA 2007), and approve the decision of the Fifth District in Crocker v. Diland Corp., 593 So.2d 1096 (Fla. 5th DCA 1992). In this case, the county court erroneously exercised subject-matter jurisdiction where it had none. County courts may not determine ejectment claims, and the summary procedure of chapter 51 does not apply to ejectment actions. Further, when a plaintiff specifically pleads ejectment, a county court may not sua sponte amend the plaintiff's complaint to vest itself with jurisdiction and to rationalize the application of chapter 51 summary proceedings. This case should never have progressed this far. Nonetheless, since it has, we must quash and remand to the Fourth District Court of Appeal. The Fourth District is directed to effectuate our decision by remanding to the Broward County Court with directions consistent with this opinion.
It is so ordered.
QUINCE, C.J., and ANSTEAD, J., concur.
WELLS, J., concurs in result only with an opinion, in which CANTERO, J., concurs.
BELL, J., concurs in result only.
PARIENTE, J., recused.
WELLS, J., concurring in result only.
I concur with the result in this case, in which the decision of the Fourth District Court of Appeal is quashed and the case is remanded to allow the case to proceed to a merits determination. I also concur in the approval of the decision of the Fifth District Court of Appeal in Crocker v. Diland Corporation, 593 So.2d 1096 (Fla. 5th DCA 1992).
*1260 However, I do not agree with the opinion that the county court was in error to treat the case as an eviction, which gave the county court jurisdiction. I do not believe that because the action was entitled "ejectment" it meant that the county court could not look to the allegations of the complaint to determine subject matter jurisdiction.[12] It appears to me that where this case got off of the right track was in the granting of the default. The practical fact here was that the defendant, as in the Crocker case, timely served papers in the case, setting forth defenses. As in Crocker, I cannot agree that what the defendant filed was a nullity, and therefore the default should not have been entered.
CANTERO, J., concurs.
NOTES
[1] This case involves the 2006 version of the Florida Rules of Civil Procedure.
[2] For this reason, and others expressed throughout this opinion, we are understandably concerned with the issue of whether an enforceable lease-termination agreement exists in this case. However, this is a question best addressed by the parties and the appropriate trial court that might consider this dispute.
[3] Pro-Art's alleged counter-offer stated that V-Strategic would deposit the $95,000 in the trust account of Pro-Art's counsel pending termination of the lease; whereas, V-Strategic's alleged acceptance of the counter-offer indicated that V-Strategic would not transfer the funds until Pro-Art vacated the Hallandale property.
[4] Pro-Art continued to treat the original lease as valid and continued paying rent until it was evicted from the Hallandale property on May 3, 2006. There has never been an allegation of failure to pay rent in this case.
[5] V-Strategic abandoned its claim for damages only after commencement of the county-court hearing on Pro-Art's Motion to Dismiss for Lack of Subject-Matter Jurisdiction. This was likely due to the fact that V-Strategic was beginning to realize the extent of the jurisdictional and procedural defects present in its complaint. For example, even assuming that V-Strategic had originally intended to plead a tenant-removal action under chapter 83, Florida Statutes, it would have been required to plead separate counts for possession and damages, and the damages count would have been subject to the general Rules of Civil Procedure in their entirety, not section 51.011. See § 83.231, Fla. Stat. (2006) ("[N]o money judgment may be entered except in compliance with the Florida Rules of Civil Procedure." (emphasis supplied)); Camena Invs. & Prop. Mgmt. Corp. v. Cross, 791 So.2d 595, 596 (Fla. 3d DCA 2001) (substantially similar). Apparently realizing this fact, V-Strategic dropped its demand for damages. The record does not indicate that V-Strategic provided any advance notice of its intent to abandon its damages claim.
[6] Intervening Saturdays, Sundays, and legal holidays do not count toward the five-day limit under section 51.011. See Berry v. Clement, 346 So.2d 105, 106 (Fla. 2d DCA 1977) (holding that section 51.011 does not provide a time-computation procedure; therefore, Florida Rule of Civil Procedure 1.090(a) applies, which states that "[w]hen the period of time prescribed or allowed is less than 7 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." (emphasis supplied)). April 8 and 9 of 2006 were a Saturday and a Sunday respectively.
[7] To further complicate matters, the parties stated during oral argument that V-Strategic had already filed an essentially contemporaneous action in Dade County Circuit Court to enforce the alleged lease-termination agreement. Counsel for V-Strategic candidly acknowledged that V-Strategic's right of possession hinged on whether this alleged agreement was enforceable. However, this issue was never addressed due to the default judgment entered by the Broward County Court.
[8] If, however, a damage claim was presented and the amount in controversy exceeded $15,000, the Broward County Circuit Court would have been the proper court in which to bring any of the three above-mentioned causes of action. See §§ 34.01(1)(c), 34.011, Fla. Stat. (2006).
[9] Further, even if construed as a tenant-removal complaint, V-Strategic's county-court ejectment complaint likely remains defective. See Fla. R. Civ. P. Form 1.947 (eviction complaint) ("Paragraph 3 must specify whether the rental agreement is written or oral and if written, a copy must be attached." (emphasis supplied)). V-Strategic never attached a copy of the underlying lease; the only attachments were the two letters that allegedly formed a binding termination agreement. See Fla. R. Civ. P. 1.130(a)-(b) (mandating that a plaintiff attach a copy of a contract to the complaint or incorporate the relevant portions thereof if the contract constitutes a basis for his or her cause(s) of action).
[10] The allegations of V-Strategic's complaint taken "as true" should not have led to the issuance of a writ of possession and the ouster of Pro-Art from the Hallandale property. The correspondence V-Strategic attached to its complaint became a part of that pleading for all purposes, see Fla. R. Civ. P. 1.130(b); however, that same correspondence does not appear to constitute a valid lease-termination agreement. See generally Lincoln, 94 Fla. 1097, 115 So. 498; Restatement (Second) of Contracts §§ 26-27 (1981). A default only admits the well-pled allegations of the corresponding complaint. See, e.g., Days Inns Acquisition Corp. v. Hutchinson, 707 So.2d 747, 749 (Fla. 4th DCA 1997) ("The entry of a default does not automatically entitle the plaintiff to the entry of a default judgment. On entry of default, the defaulting party admits only the well-ple[d] factual allegations of the complaint against it. The defaulting party does not admit conclusions of law." (citation omitted)); Alls v. 7-Eleven Food Stores, Inc., 366 So.2d 484, 486 (Fla. 3d DCA 1979) ("[I]t would be proper for a trial judge to enter a summary judgment for a defaulting defendant when it is apparent that the plaintiff can recover no damages against the defaulting defendant.").

A related issue also remains for the parties and the appropriate trial court that might consider this dispute: Did this supposed lease-termination "agreement" comply with the formalities of section 689.01, Florida Statutes (2006)? That statutory section states:
No estate or interest of freehold, or for a term of more than 1 year, or any uncertain interest of, in or out of any messuages, lands, tenements or hereditaments shall be created, made, granted, transferred or released in any other manner than by instrument in writing, signed in the presence of two subscribing witnesses by the party creating, making, granting, conveying, transferring or releasing such estate, interest, or term of more than 1 year, or by the party's agent thereunto lawfully authorized, unless by will and testament, or other testamentary appointment, duly made according to law; and no estate or interest, either of freehold, or of term of more than 1 year, or any uncertain interest of, in, to or out of any messuages, lands, tenements or hereditaments, shall be assigned or surrendered unless it be by instrument signed in the presence of two subscribing witnesses by the party so assigning or surrendering, or by the party's agent thereunto lawfully authorized, or by the act and operation of law. No seal shall be necessary to give validity to any instrument executed in conformity with this section. Corporations may convey in accordance with the provisions of this section or in accordance with the provisions of ss. 692.01 and 692.02 [providing for execution by affixation of corporate seal and the signature of certain executive officers].
Id. (emphasis supplied).
[11] In Green v. Sun Harbor Homeowners' Association, Inc., 730 So.2d 1261, 1263 (Fla. 1998), this Court relied upon rule 1.100(a) in holding that while "[c]omplaints, answers, and counterclaims are pleadings," a "motion to dismiss is not." (Emphasis supplied.) Thus, section 51.011's provision that "[n]o other pleadings are permitted," which is nearly the same language as that present in rule 1.100(a) ("No other pleadings shall be allowed"), does not address the motion-practice issue. (Emphasis supplied.)
[12] It seems to me especially important in the county court, where many litigants are pro se, for the judge to have the discretion to not dismiss cases but, rather, to conform pleadings to what a party is actually seeking. Of course, the judge must give the other party a fair opportunity to respond to the conformed complaint.