DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DEXTER F. GEORGE,**
Appellant,

v.

**NATHANIEL GILBERT** and **SUJITTAR SINGH,**
Appellees.

No. 4D17-3485

[February 20, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Nicholas R. Lopane, Judge; L.T. Case No. FMCE-16-14204.

Dexter F. George of Law Office of Dexter F. George, Plantation, pro se.

Ellen S. Morris of Elder Law Associates, Boca Raton, for appellees.

GERBER, C.J.

The former counsel to a spouse, whose marriage to an incapacitated person was annulled, appeals from the circuit court's order directing the former counsel to pay 50% of the incapacitated person's attorney's fees incurred in obtaining the annulment. The spouse's former counsel primarily argues that he was not afforded due process, because after he had withdrawn from the case, he was not provided notice and an opportunity to be heard regarding the court's decision to impose attorney's fees against him. We agree with the former counsel's argument. Therefore, we reverse the order and remand for a new hearing providing due process.

### *Procedural History*

The former attorney filed an answer and affirmative defenses on behalf of the spouse, whose marriage to an incapacitated person became the subject of an annulment petition. The former attorney then withdrew from representing the spouse, nineteen days before the trial on the petition.

At the trial on the petition, a new attorney represented the spouse. At the end of the trial, the circuit court not only granted the annulment, but

also found that "the attorney" (unspecified) and the spouse should have to pay the incapacitated person's attorney's fees, because the spouse's opposition to the annulment was disingenuous:

> [N]ot only am I going to grant this annulment, but I'm going to find that [the spouse] is going to have to pay all [the incapacitated person's] attorney's fees for these proceedings. And here's why: [The spouse] has engaged in a disingenuous argument by [having filed before the marriage] a petition to appoint an emergency temporary guardian [for the] incapacitated person.
>
> And then there was an actual finding by the courts saying that he was an incapacitated person and he needed an emergency guardian appointed. Then [the spouse] absolutely disingenuously and probably illegally ran out and married him regardless of the fact that she asked for him to be declared incapacitated. And the courts said, yes, he is incapacitated and then she went out and married him.  There's no way I'm not going to award attorney's fees in this case . . . This is . . . some of the most malicious and intentionally and wantonly reckless litigation I've ever seen.  I'm granting the entitlement to attorney's fees.
>
> [To the incapacitated person's counsel] Put together your billing statement.  I'm going to award [attorney's fees] and we'll take a look at it because I'm awarding it as a sanction . . . *I'm going to consider awarding against both the attorney and [the spouse] . . .*

(emphasis added).

Following the trial, the circuit court entered a written order granting the petition for annulment.  Consistent with the circuit court's oral pronouncement, the written order also indicated that the circuit court would be directing the spouse and the spouse's "counsel" (unspecified) to pay the incapacitated person's attorney's fees:

> [The spouse] has engaged in a disingenuous defense of these annulment proceedings and maliciously and wantonly reckless litigation as she (a) was the initial petitioner in [the incapacitated person's] mental health and guardianship proceedings alleging [he] was fully incapacitated; (b) petitioned to have an emergency temporary guardian appointed for [the

incapacitated person]; (c) knew [he] was determined to be fully incapacitated by Court Order [before the marriage]; [and (d)] disingenuously and illegally obtained a license to marry [the incapacitated person] and married [the incapacitated person].

It is therefore ORDERED AND ADJUDGED:

1.  The Petition for Annulment of the marriage between [the incapacitated person] and [the spouse] is hereby GRANTED, and the marriage between [the incapacitated person] and [the spouse] . . . is void ab initio.

2.  Attorney's fees and costs are hereby awarded in favor of [the incapacitated person].

3.  By separate Order following an additional hearing, the Court shall determine the amount(s) to be paid to [the incapacitated person] by [the spouse] and/or [the spouse's] counsel.

Significantly, the written order did not indicate that a copy of the order was furnished to the spouse's former counsel. Rather, the written order indicated that copies of the order were furnished to only the incapacitated person's counsel and the spouse's trial counsel. The written order also did not indicate which of the spouse's "counsel" was the subject of the Order, or the legal basis upon which the circuit court had awarded attorney's fees and costs in favor of the incapacitated person.

Approximately a month after trial, the incapacitated person's counsel filed a "Notice of Special Set Hearing," set to occur approximately three months after the notice, for "Determination and Assessment of [the Incapacitated Person's] Attorney's Fees and Costs Against [the Spouse] and/or Her Counsel." The notice of hearing contained a certificate indicating that the notice was being served on both the spouse's trial counsel and the spouse's former counsel. However, like the written order, the notice of hearing did not indicate which of the spouse's "counsel" was the subject of the hearing, or the legal basis for determination and assessment of the incapacitated person's attorney's fees and costs against the spouse and her "counsel."

The hearing occurred on the date it was noticed. The incapacitated person's counsel and the spouse's trial counsel appeared. The spouse's former counsel did not appear. The incapacitated person's counsel told

3

the court: "To refresh your recollection . . . [the spouse] was [earlier] represented by [former counsel], *who you also directed to be here today. The hearing was coordinated with him* and noticed to him, although he's not here this morning." (emphasis added).  Although the record supports that the hearing was noticed to the spouse's former counsel, nothing in the record indicates that the court specifically directed the spouse's former counsel to attend, or that the hearing was coordinated with the spouse's former counsel.

The hearing then proceeded.  The spouse's trial counsel convinced the circuit court to enter an order dismissing the sanctions against her because she appeared on the spouse's behalf just days before the trial. The circuit court excused the spouse's trial counsel from the courtroom.

The circuit court then received the incapacitated person's counsel's sworn testimony regarding the hours expended, hourly rate charged, and costs.  The circuit court stated it was granting the incapacitated person's counsel's attorney's fees and costs in full as requested.

The circuit court later entered a written order to that effect.  The written order apportioned 50% of the attorney's fees and costs upon the spouse, and the other 50% upon the spouse's former counsel.  The written order did not state the legal basis upon which the circuit court had awarded the incapacitated person's attorney's fees and costs against the spouse and the spouse's former counsel.  The written order also did not indicate that copies of the order were being furnished to the spouse and the spouse's former counsel.

In any event, ten days after the hearing, the incapacitated person's counsel e-mailed the order on attorney's fees and costs, plus the transcript of the hearing on the attorney's fees and costs, to the spouse's former counsel.

### *This Appeal*

This appeal followed.  The spouse's former counsel argues that he was not afforded due process, because after he had withdrawn from the case, he was not provided notice and opportunity to be heard regarding the circuit court's decision to impose attorney's fees against him.

We agree with the spouse's former counsel's argument.  "[T]o allow a court to rule on a matter without proper pleadings and notice is violative of a party's due process rights." *Pro-Art Dental Lab, Inc. v. V-Strategic Grp., LLC*, 986 So. 2d 1244, 1252 (Fla. 2008).  "[W]hen a court considers issues

not noticed for hearing, the court denies the litigant due process, and any ensuing order or judgment must be reversed." *In re Assimakopoulos*, 228 So. 3d 709, 715 (Fla. 2d DCA 2017). "Entry of judgment on a motion never made, never served upon the opposing party, and never noticed for hearing patently violates due process." *Id.* at 716.

Here, nothing in the record indicates that the spouse's former counsel had been given notice and an opportunity to be heard before the circuit court orally announced it was ordering the spouse's unspecified "attorney" to pay the incapacitated person's attorney's fees and costs. Furthering that denial of due process, the written order directing the spouse's unspecified "counsel" to pay the incapacitated person's attorney's fees and costs apparently was never furnished to the spouse's former counsel.

The answer brief argues that the spouse's former counsel was provided due process, because the spouse's former counsel later was served with the "Notice of Special Set Hearing" for determination and assessment of the amount of the incapacitated person's attorney's fees and costs. We disagree with this argument, because due process already had been denied to the spouse's former counsel. The circuit court already had orally announced, and by written order confirmed, its decision to order the spouse's unspecified "counsel" to pay the incapacitated person's attorney's fees and costs. The only decision left for the special set hearing was the amount of the attorney's fees being awarded.

The fact that the spouse's former counsel did not attend the special set hearing does not change our decision. While the proper and professional action would have been for the spouse's former counsel to have inquired about the notice's contents and attended the hearing, we must repeat that due process already had been denied to the spouse's former counsel. The court already had orally announced, and by written order confirmed, its decision to order the spouse's unspecified "counsel" to pay the incapacitated person's attorney's fees and costs, without first giving the spouse's former counsel notice and an opportunity to be heard.

The answer brief also argues that the circuit court was permitted to order the spouse's former counsel to pay the incapacitated person's attorney's fees without prior notice, because the circuit court's order was issued upon the court's own motion under section 57.105, Florida Statutes (2017). In support of that argument, the answer brief relies on our decision in *Watson v. Stewart Tilghman Fox & Bianchi, P.A.*, 195 So. 3d 1163 (Fla. 4th DCA 2016), for the proposition that, in the answer brief's words, "procedurally deficient proceedings are not enough to quash sanctions on a court's own motion."

We disagree with the answer brief's argument, and its reliance on *Watson,* for two reasons.

First, from a technical standpoint, while it is reasonable to assume that the circuit court's order was initiated on its own motion under section 57.105, at no point did the circuit court indicate that its order was being initiated on its own motion under section 57.105 (which the spouse's former counsel argues is a secondary due process violation).

Second, *Watson* does not stand for the general proposition that "procedurally deficient proceedings are not enough to quash sanctions on a court's own motion." *Watson*'s holding was more specific than that.

In *Watson,* after final judgment was entered in the defendants' favor, the defendants filed a motion for attorney's fees under section 57.105. 15 So. 3d at 1165. However, the defendants did not comply with section 57.105(4)'s safe harbor provision. *Id.* The defendants argued it did not matter that they did not comply with the safe harbor provision, because the trial court could grant attorney's fees on its own motion. *Id.* The plaintiffs responded that because the defendants' motion was insufficient, the trial court could not grant attorney's fees on its own motion. *Id.* at 1166. Ultimately, the trial court, on its own motion, granted attorney's fees to the defendants, explaining "I am not simply adopting a failed 57.105 attempt by the Defendants," but was making its own finding that the plaintiffs' action was frivolous. *Id.*

On appeal, the plaintiffs contended that the trial court circumvented section 57.105's safe harbor provision by adopting the defendants' motion as the trial court's own motion. *Id.* at 1167. We disagreed with the plaintiffs' argument, reasoning:

> [A] bright-line rule that prevents a trial court from imposing sanctions on its own if a motion filed by the moving party is procedurally deficient would not only be inconsistent with the plain meaning of the statute, but would also obtrusively infringe on the trial court's power to sanction a party which it determines is deserving of such a sanction.
>
> . . .
>
> [*W*]*e now expressly hold that a trial court does not abuse its discretion in ordering a party to pay attorney's fees pursuant to section 57.105(1) on its own initiative, even if a motion is filed*

6

*by a party and the moving party fails to comply with the safe harbor requirements of the rule, as long as it can be determined from the record that the trial court is not simply adopting the moving party's motion.*

*Id.* at 1167-68 (emphasis added). As can be seen from the quote above, our reference in *Watson* to excusing a section 57.105 procedural deficiency was limited to the situation in which the trial court's motion did not adopt the moving party's non-compliant motion. We did not hold, and *Watson* should not be read to hold*,* that any section 57.105 procedural deficiency, including a due process violation, may be excused without consequence.

Based on the foregoing, we reverse the circuit court's order directing the spouse's former counsel to pay 50% of the incapacitated person's attorney's fees incurred in obtaining the annulment. We remand for the circuit court to give notice of its intent to entertain a motion for attorney's fees on its own initiative to the spouse's former counsel (including stating the basis for the circuit court's motion), and to give the spouse's former counsel an opportunity to be heard on the motion before the circuit court decides whether to order the payment of attorney's fees.

*Reversed and remanded for proceedings consistent with this opinion.*[1]

---

[1] The answer brief's reliance on *Watson* has caused us to reconsider the soundness of dicta from that opinion. That dicta provided, in pertinent part:

We . . . do not construe [section 57.105] to require the trial court to give a separate notice of its intent to entertain a section 57.105 motion on its own initiative, when a motion for such fees is filed by a party and notice of hearing on the party's motion is given. Such a construction would . . . give the appearance of impropriety, suggesting in advance that the motion will be granted.

We consider that paragraph to be dicta, because no issue existed in *Watson* regarding whether the trial court was required to give a separate notice of its intent to entertain a section 57.105 motion on its own initiative. Nevertheless, based on our holding in this case, we use this opportunity to clarify that a court must give notice of its intent to entertain a section 57.105 motion on its own initiative. As in this case, failure to provide such notice and an opportunity to be heard before ordering the payment of attorney's fees under section 57.105, or any other basis, results in a deprivation of due process. The need to provide due process outweighs any perceived departure of neutrality resulting from a court's initiation of its own section 57.105 motion.

CIKLIN and KUNTZ, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***